UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID POGGI, on his own behalf
and others similarly situated,
        Plaintiff,
v.
HUMANA AT HOME 1, INC.
and HUMANA, INC.,
        Defendants.
_____

Case No. 8:17-cv-433-T-24 MAP
**Lead Case Number**

HARRY CRUZ, individually and
on behalf of all others similarly situated,
        Plaintiff,
v.
HUMANA AT HOME 1, INC.
and HUMANA, INC.,
        Defendants.
_____/

Case No. 8:17-cv-1234-T-24 JSS

**ORDER**

This cause comes before the Court on Plaintiff's Motion for Conditional Certification and Facilitation of Court-Authorized Notice. (Doc. No. 51). Defendants oppose the motion (Doc. No. 57), and Plaintiff has filed a reply brief (Doc. No. 62). As explained below, the motion is denied.

**I.  Background**

Plaintiff David Poggi brought this Fair Labor Standards Act ("FLSA") proposed collective action against Defendants Humana at Home 1, Inc. and Humana, Inc. (collectively referred to as "Humana").[1] Humana is a health insurance corporation. Humana offers healthcare management support to individuals who are managing chronic healthcare conditions or who are

---

[1]Humana has pointed out that Humana at Home 1, Inc. and Humana, Inc. are two separate legal entities and argues in a footnote that Humana, Inc. is not a proper party in this case. Humana is not pursuing this argument in response to the instant motion.

transitioning following discharge from a hospital. (Doc. No. 57-1, ¶ 4). In order to do so, Humana contacts members, evaluates their healthcare needs, develops care plans, and helps connect members with providers or services that can meet those needs. (Doc. No. 57-1, ¶ 5). Humana does this through its employees that are employed as "Healthcare Finders." (Doc. No. 57-1, ¶ 6). Poggi sometimes refers to "Healthcare Finders" as "Healthcare Coordinators" or "Personal Health Coaches," and Humana appears to agree that all three labels describe the same position. (Doc. No. 57-1, ¶ 27).

In his second amended complaint (Doc. No. 48), Poggi alleges the following: Poggi started working for Humana in September of 2015 as a Healthcare Coordinator, and he continued working until April of 2017. (¶ 90, 91, 98). His job duties involved contacting Humana's members, coordinating care, and documenting the calls. (¶ 92). Poggi contends that he was a non-exempt employee under the FLSA and worked more than forty hours during one or more weeks of his employment with Humana, yet Humana did not pay him for all of the overtime hours that he had worked. (¶ 93–97).

Poggi contends that Humana's failure to pay him overtime was part of Humana's "Workforce Optimization Policy"—a policy that Poggi does not specifically define within the second amended complaint. (¶ 4, 139). Poggi contends that Humana utilized workforce optimization services from Verint Industries, Inc. ("Verint") in order to increase the productivity of Humana's employees. (¶ 3). According to Poggi, Humana utilized Verint's services in order to monitor, track, and optimize the productivity of Poggi and other similarly situated employees. (¶ 129, 138–40). One way Humana attempted to increase productivity was by requiring Poggi and other Healthcare Coordinators to meet daily and weekly quotas. (¶ 156).

Verint's technology recorded the amount of time that Poggi and others were logged into Humana's system. Poggi contends that Verint's time records show that Poggi was logged in for 44 hours and 24 minutes during the week of February 14, 2016, yet Humana only paid Poggi for 40 hours of work that week. (¶ 143–45). Poggi contends that there were other weeks in which Verint's technology recorded overtime hours for which Poggi was not paid. (¶ 146). Based on this, Poggi makes the following allegations:

> 147. By virtue of its unlawful Workforce Optimization Policy, Defendants sought to increase productivity of Plaintiff(s) and other similarly-situated non-exempt workers, while failing to pay proper overtime wages.
> 148. At all times relevant, Defendants had actual or constructive knowledge (down to each electronically recorded minute) of the hours worked by Plaintiff Poggi and others similarly situated.
> 149. Defendants knew or should have known that Plaintiff(s) were not being paid for all of their hours worked because Defendants were in possession of detailed electronic records and Workforce Optimization data showing Plaintiff(s)' actual hours each week.
> 150. Defendants failed to ensure that its payroll records matched the electronic data collected under its Workforce Optimization Policy in violation of the FLSA's recordkeeping requirements.
> 151. Defendants paid Verint to help Humana maximize profits while not paying for all overtime hours worked.

(Doc. No. 48, ¶ 147–51).

Thus, Poggi contends that Humana violated the FLSA's overtime provisions by not paying him for all hours worked in excess of forty each week. He filed this purported nationwide collective action on behalf of the following class:

> [A]ll current and former non-exempt "Healthcare Coordinator" employees (including but not limited to Healthcare Coordinators, Personal Health Coaches, Home Visit Field Case Managers, and

3

>Wellness Coordinators[2]) who: (1) worked for Defendants within the three (3) years preceding the filing of this lawsuit; (2) were subject to Defendants' unlawful Workforce Optimization Policy and; (3) worked more than forty (40) hours per week without proper overtime compensation.

(Doc. No. 48, ¶ 153).

In addition to Poggi, eight other current or former employees of Humana have opted into this case: Celine Daniel (Doc. No. 10-1), Heather Teppe (Doc. No. 13-1), Tharius Bethel (Doc. No. 16-1), Chimere Ford (Case 8:17-cv-1234, Doc. No. 7), Sashana Nixon (Case 8:17-cv-1234, Doc. No. 8), Vontrice Wilson (Doc. No. 64-1), Cherilyn Marrero (Doc. No. 65-1), and Carolyn Stubbins-Mayes (Doc. No. 63-1). Additionally, Harry Cruz filed an FLSA lawsuit against Humana, and his case was consolidated into this case. (Doc. No. 44; Case 8:17-cv-1234, Doc. No. 12).

## II.  Motion for Conditional Certification and Court-Authorized Notice

Pursuant to 29 U.S.C. § 216(b), Poggi moves the Court to conditionally certify a collective action. Within his motion, he gives a little more information about the Workforce Optimization Policy alleged in the second amended complaint. Specifically, he contends that: (1) Humana imposes daily and weekly quotas that cannot be met without working overtime; (2) Humana uses the Verint software to track and increase productivity with respect to the quotas; (3) the Verint software provides reports to Humana that show that employees are working in excess of forty hours per work; (4) the Verint data is not used to determine the number of hours

---

[2]Poggi contends that they were all Healthcare Coordinators, a position that was sometimes referred to as Personal Health Coaches, Home Visit Field Case Managers, and Wellness Coordinators. (Doc. No. 48, ¶ 125). Humana has not stated whether it agrees that Home Visit Field Case Managers held the same position as Healthcare Coordinators, but the job titles imply to the Court different job duties.

that employees should be paid for working;[3] and (5) Humana has a policy of not paying overtime, despite its knowledge of the overtime hours being worked, as shown by the Verint reports. Thus, Poggi contends that this Workforce Optimization Policy of setting quotas that could not be met without working overtime while not paying overtime violated the overtime provisions of the FLSA.

      Poggi submits the declarations of several opt-in plaintiffs, including Heather Teppe (Doc. No. 51-4), to corroborate his allegations about Humana's practices. Teppe describes an environment wherein she regularly worked more than forty hours each week and was threatened with termination if she did not meet her daily and weekly quotas. (¶ 11). She contends that she and others complained to management about the fact that the quota system required them to work outside of their scheduled shifts in order to complete their work. (¶ 14). She contends that management responded that they should carry any extra hours worked over to the following day.[4] (¶ 14). Additionally, she states that the quota system caused a vicious cycle—employees were not allowed to work overtime, but they were threatened with termination if they did not meet their quotas, which required them to work overtime. (¶ 15). She contends that everyone worked extra hours because they did not want to get fired. (¶ 24). She alleges that there were departmental meetings where employees were told not to leave until they met their quotas, yet

---

[3]Healthcare Coordinators are responsible for accurately recording and electronically submitting their time. (Doc. No. 57-1, ¶ 18, 25). In doing so, they must attest that the amount of time that they are submitting is accurate. (Doc. No. 57-1, ¶ 25).

[4]Humana submitted evidence that some of the supervisors allowed employees to "flex" their schedules, such that if an employee worked more than 8 hours on one day, they could work less than 8 hours on a different day that same week. (Doc. No. 57-3, ¶ 7; Doc. No. 57-6, ¶ 8–10; Doc. No. 57-10, p. 6, ¶ 24; Doc. No. 57-10, p. 16, ¶ 23).

they were not paid for all of the hours that they had worked. (¶ 20, 33). She points out that Humana used Verint's technology to track their productivity, which allowed Humana to know the exact amount of time employees were working. (¶ 21, 25, 26, 29). Thus, Teppe confirmed Poggi's description of a workplace where quotas had to be met, which required more than 40 hours of work per week to meet, and an employer who refused to pay overtime, despite having information that employees worked more than 40 hours per week.

Based on the above, Poggi contends that he has shown that he and others similarly situated were victims of a common policy or plan that violated the FLSA, which makes a collective action a suitable vehicle to pursue their claims. In his motion, Poggi has changed the description of the putative nationwide class to the following:

> [A]ll non-exempt Healthcare Coordinators, Personal Health Coaches, Home Visit Field Case Managers, Wellness Coordinators and other similarly-situated customer contact employees who worked for Defendant from February 2014 to the present, who worked more than forty (40) hours per week, and who, by virtue of Defendant's unlawful "Workforce Optimization Policy," were not paid for: (a) all time spent working outside their regularly-scheduled shifts to complete their daily and/or weekly quota requirements; and/or (b) all electronically recorded rest periods of short duration (less than 20 minutes) as defined by 29 C.F.R. § 785.18, *et seq.*

(Doc. No. 51, p. 3). A notable difference between the class description in the motion and the class description in the second amended complaint is that Poggi has now inserted the issue of electronically recorded rest periods of short duration.[5]

---

[5] In response to this newly defined proposed class, Humana points out that Poggi raises the issue of electronically recorded rest periods of short duration for the first time in the instant motion. Further, Humana argues that not only does the second amended complaint contain no allegations supporting this new type of FLSA violation, but also including this new type of FLSA violation as part of the class definition would lead to the pursuit of two completely different type of FLSA claims. It is unnecessary for the Court to address these arguments,

## A. Framework for Analyzing Motions for Conditional Certification and Notice

Pursuant to 29 U.S.C. § 216(b), an action to recover for violations of the FLSA may be brought by one or more employees on their own behalf and on behalf of other similarly situated employees. If an employee-plaintiff wants to maintain an opt-in collective action against his employer for FLSA violations, the plaintiff must demonstrate that he is similarly situated to the proposed members of the collective class and that there is a desire by them to join the lawsuit. See Hipp v. Liberty National Life Insurance Company, 252 F.3d 1208, 1217 (11th Cir. 2001); Dybach v. State of Florida Dept. of Corrections, 942 F.2d 1562, 1567–68 (11th Cir. 1991). An employee interested in joining, or opting into, the lawsuit must file a written consent in order to become a party to the suit. See 29 U.S.C. § 216(b).

The Eleventh Circuit has suggested a two-tiered approach for district courts to use when determining whether an opt-in class should be certified:

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for "decertification" by the defendant[,] usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and

---

because the Court ultimately concludes that conditional certification is not warranted in this case.

> makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives—i.e. the original plaintiffs—proceed to trial on their individual claims.

Hipp, 252 F.3d at 1218 (quoting Mooney v. Aramco Services Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995)).[6]

### B. Conditional Certification Analysis

In evaluating whether conditional certification is appropriate, this Court considers: (1) whether there are other employees who desire to opt-in, and (2) whether these other employees are similarly situated to Poggi with respect to their job requirements and with regard to their pay provisions. See Kubiak v. S.W. Cowboy, Inc., 2014 WL 2625181, at *8 (M.D. Fla. June 12, 2014)(citation omitted). Humana disputes that Poggi can satisfy either element.

#### 1. Desire to Opt-In by Other Employees

In order for this Court to conditionally certify the proposed class, Poggi must show that there is a reasonable basis for the contention that there are other employees who desire to opt into this litigation. See id. (citations omitted). "This burden is not onerous." Id. (citation omitted). As explained by one court:

> Evidence of other employees who desire to opt in may be based on affidavits, consents to join the lawsuit, or expert evidence on the existence of other similarly-situated employees. In making this showing, a plaintiff cannot rely on speculative, vague, or conclusory allegations. Instead, the plaintiff must offer detailed allegations supported by affidavits which successfully engage defendants'

---

[6]Mooney was overruled in part on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003).

> affidavits to the contrary. Indeed, a plaintiff must proffer a minimum quantum of evidence to warrant the creation of a collective [action]. The mere anticipation that others may want to join the lawsuit or the mere presence of a uniformly adverse compensation policy is insufficient by itself. Moreover, [c]ertification of a collective action and notice to a potential class is not appropriate to determine *whether* there are others who desire to join the lawsuit.

Id. (internal citations and quotation marks omitted).

Humana argues that Poggi has not shown that there is sufficient interest in joining in this lawsuit and points to the fact that only eight people (Daniel, Teppe, Bethel, Ford, Nixon, Wilson, Marrero, and Stubbins-Mayes) have joined Poggi and Cruz to pursue overtime claims, despite the fact that this case has been pending for more than eight months. Humana estimates that the purported class consists of approximately 2,300 people, so according to Humana, the interest shown by eight opt-ins is not significant. Additionally, Humana points out that it has submitted the declarations of 17 potential class members,[7] all of whom contend that they were paid for all of the hours that they worked and that they have never had any issues regarding their pay. (Doc. No. 57-10; Doc. No. 57-11).

Poggi did submit the declarations of Samuel Meeks (Doc. No. 51-5), opt-in plaintiff Carolyn Stubbins-Mayes (Doc. No. 63-1), opt-in plaintiff Vontrice Wilson (Doc. No. 64-1), opt-in plaintiff Cherilyn Marrero (Doc. No. 65-1), and opt-in plaintiff Heather Teppe (Doc. No. 51-4). Meeks, who mentions nothing about quotas in his declaration and is not a Healthcare Coordinator, states that "[t]here are other people out there who, if given notice of their right to recover wages owed, would participate in this case." (Doc. No. 51-5, ¶ 21). Humana argues that

---

[7]The Court has not included the 18th declaration of Alyssa Marie Bailey submitted by Humana, as she is a Community Health Educator. (Doc. No. 57-11, p. 9–12).

this bare-bones, conclusory statement is not sufficient proof that other potential class members are interested in joining this case. Notably, Meeks does not state that he knows of others interested in joining this case, he states a more broad assertion—if people found out about their right to recover wages owed, they would participate in this case. Thus, Meeks is asserting his belief regarding how others would act. Furthermore, his assertion is flawed, because the Court is not going to provide notice definitively stating that class members are, in fact, owed any money. As such, the Court agrees that this declaration is entitled to little weight regarding the issue of interest by others in joining this lawsuit.

Stubbins-Mayes also does not mention anything about quotas in her declaration, nor does she appear to be a Healthcare Coordinator, as she states in her declaration that she worked in both the Grievance and Enrollment departments and that her job involved phone calls regarding enrollment and insurance disputes. With regard to interest by others in joining this lawsuit, Stubbins-Mayes states the following:

> There are other people out there who, if given notice of their right to recover wages owed, would participate in this case. I am friends with people who still work in Humana's Louisville location. The policy of not paying people for all of their hours worked is ongoing.

(Doc. No. 63-1, ¶ 18). This statement basically mirrors what Meeks asserted, plus she adds that she is friends with people that still work for Humana. She does not state that she has discussed the case with her friends; instead, she asserts her conclusory belief that others would join this case if they were "given notice of their right to recover wages owed." Like Meeks' declaration, this declaration is entitled to little weight regarding the issue of interest by others in joining this lawsuit.

Similarly, Wilson, who is also not a Healthcare Coordinator (she works in Humana's

claims department), has made a vague assertion that others are interested in joining this lawsuit. Specifically, she states the following:

> The are other people who work with me who would participate in this case if they got notice of the lawsuit. There are other people who are treated the same way as me that currently work for the company. Many people are afraid to complain because they are afraid they will be fired.

(Doc. No. 64-1, ¶ 16). Again, this declaration does not contain a factual basis for her assertions—she does not state that she spoke to other people about joining this lawsuit. If she spoke with them, they would have notice of this lawsuit; lack of notice is one of Wilson's reasons for their failure to join. She also cites fear of being fired for joining, but again, she gives no specifics to provide a basis for her belief (or alleged knowledge) that people are afraid of being fired—she does not describe conversations or state who she may have discussed this with. Without more, the Court is left with conclusory allegations that simply show her belief that others would join this lawsuit.

Similarly, Cherilyn Marrero submitted a declaration, in which she states the following: "There are other people who worked with me who would participate in this case. They were treated the same way I was." (Doc. No. 65-1, ¶ 18). Like the other declarations, Marrero provides no factual foundation to support her contention that others would join in this case.

Teppe also submitted a declaration. Her declaration more thoroughly describes Humana's alleged FLSA overtime violations. However, with respect to others' interest in joining this lawsuit, Teppe makes the following assertions:

> 55. There are other hourly paid employees out there who would join this case if given notice of their right to do so.
> \* \* \*
> 61. The other people I worked with deserve to be notified of their

11

> rights. There are many people who still work for Humana who would
> participate in this case if given proper notice.

(Doc. No. 51-4, ¶ 55, 61). Humana argues that like Meeks' allegation, these bare-bones, conclusory statements are not sufficient proof that other potential class members are interested in joining this case. Teppe fails to provide any information as to how she knows that other people are interested, nor does she identify any such people. Stated differently, how could Teppe know others would join this case without speaking with others about this case? If she had spoken to others about this case, they would have knowledge of this case, and according to Teppe's assertion, they would have sought to join this case. The Court agrees that Teppe's declaration is not strong proof of interest by others in joining this lawsuit; instead, it simply shows Teppe's *belief* that others would join. See Ramirez v. Urban Outfitters, Inc., 2014 WL 12573981, at *3 (M.D. Fla. April 22, 2014)(stating that "[u]nsupported beliefs and expectations that others might wish to opt in is entirely insufficient to justify certification of a collective action and court supervised notice to a potential class").

Thus, Poggi's proof of interest by others in joining this lawsuit consists of the fact that eight people have opted into this case (plus Cruz) and the five bare bones, conclusory declarations that others would be interested in joining.[8] However, two opt-in plaintiffs (Wilson and Stubbins-Mayes) do not appear to fit within the proposed class definition, as they do not appear to be Healthcare Coordinators. The Court finds that such is not sufficient for conditional

---

[8] Poggi also contends that he has shown evidence of fifteen other potential class members by submitting a list of his Healthcare Finder co-workers. (Doc. No. 29; Doc. No. 51, p. 16). However, he does not present any evidence that he has any actual knowledge that any of these people desire to join in this lawsuit. Thus, this list is not *evidence* that other people are actually interested in joining this lawsuit; instead, the list is simply an identification of potential class members.

certification of a nationwide class of approximately 2,300 members, even under the lenient standard set forth by the Eleventh Circuit.[9]

### 2. Similarly Situated

Even if Poggi could show sufficient interest by others in joining this lawsuit, he would also be required to show that the proposed class is similarly situated to him with respect to their job requirements. The Court notes that Poggi only needs to show that their positions are similar; Poggi is not required to show that their positions are identical. See Grayson v. K Mart Corp., 79 F.3d 1086, 1096 (11th Cir. 1996)(citations omitted). Furthermore, the similarly situated requirement "is more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance)." Id. at 1095.

The Court begins by noting that two of the opt-ins, Wilson and Stubbins-Mayes, do not appear to be Healthcare Coordinators. Instead, it appears that Poggi wants to include every customer contact employee that logged into the Verint system that was also subject to quotas. Such a broad class does not meet the requirement that Poggi and the class members be similarly situated.

---

[9]This Court notes that this is not a case where potential class members may not know that they may have worked hours for which they were not properly paid, as may be the case when an employer mis-classifies a class of employee as exempt when they really are not exempt. In exemption cases, employees may not know that they may be entitled to relief under the FLSA, so a smaller number of people opting into the case is not necessarily strong evidence that there is not interest by others in joining in the case.
  Conversely, in the instant case, Poggi theorizes that employees worked more than 40 hours per week, but they submitted time records indicating that they worked no more than 40 hours. Thus, the class consists of employees who know that they have worked for more than 40 hours without being paid for the excess hours they worked. As such, a smaller number of people opting into this case weighs against finding sufficient interest by others in joining this case, especially when combined with conclusory declarations and small number of opt-ins before the Court.

If Poggi had limited the class to all Healthcare Coordinators (also known as Healthcare Finders and Personal Health Coaches), then initially it would appear that these employees had the same job and were subject to a common policy that violated the FLSA—specifically, Humana's policy of setting quotas that cannot be met without employees working overtime, yet refusing to pay overtime for the hours worked in order to meet the quotas. Furthermore, Poggi argues that the employees' claims will all use common evidence—the information contained in the Verint reports—to prove the existence and amount of overtime hours worked.

The flaw in Poggi's argument, however, is that this is not a case that lends itself to being a representative action, because individualized issues predominate. The Court is cognizant of Poggi's argument that this concern should be dealt with in the second step of the conditional certification analysis after discovery has been completed, but the individualized nature of the claims will not change once discovery has been completed.

This Court is not required to strictly adhere to the two-tiered approach of applying a lenient standard now to conditionally certify a class and later applying a more exacting standard after the completion of discovery. Instead, the Eleventh Circuit has stated the following:

> The two-tiered approach to certification of § 216(b) opt-in classes . . . appears to be an effective tool for district courts to use in managing these often complex cases, and we suggest that district courts in this circuit adopt it in future cases. Nothing in our circuit precedent, however, requires district courts to utilize this approach. The decision to create an opt-in class under § 216(b) . . . remains soundly within the discretion of the district court.

Hipp, 252 F.3d at 1219 (citations omitted).

The purposes of FLSA collective actions are: "(1) reducing the burden on plaintiffs through the pooling of resources, and (2) efficiently resolving common issues of law and fact

that arise from the same illegal conduct." Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1264 (11th Cir. 2008)(citation omitted). However, as previously stated, individualized issues predominate in this case. One example of the individualized nature of the claims is the use of the Verint reports. The Verint software records the amount of time that an employee is logged into the system or on the phone. An employee could be logged into the system without actually working, and this defense will certainly be raised by Humana and will require individualized proof as to each employee's claim of overtime work.[10]

Additionally, it does not appear that all Healthcare Coordinators had the same daily quota to meet. While many of the declarations submitted by Humana (Doc. No. 57-10; Doc. No. 57-11) indicate that the employees had a daily quota of ten successful calls per day, some employees indicated that their daily quotas were between 13 and 15 calls per day (Doc. No. 57-10, p. 10, 42; Doc. No. 57-11, p. 28, 44, 50). Thus, representative evidence will not be helpful if employees were not subject to the same quotas. For example, the amount of time it takes to complete ten calls will likely be different than the amount of time it takes to complete 15 calls. Or, while not fully explained to the Court, it seems that there may be different types of Healthcare Coordinators with different job duties,[11] which could explain why their daily quotas

---

[10]Humana submitted the declaration of Jim Koeppel, who is the Director of Business Optimization. (Doc. No. 57-8). He states that the Verint system will record the amount of time that an employee is logged into the system, but that amount of time does not necessarily equate to the number of hours worked, because the employee could be logged in but not working. (¶ 9).

[11]For example, Bonnie Christensen, Tiki Jackson, Tameika LaShawn Shedrick, and Courtney Watts are Personal Health Coaches/Coordinators that have a daily quota of completing 13 to 15 calls. (Doc. No. 57-10, p. 40–42, ¶ 5, 12; Doc. No. 57-11, p. 28–29, ¶ 5, 9; Doc. No. 57-11, p. 43–44, ¶ 6, 7, 9; Doc. No. 57-11, p. 48–49, ¶ 5, 11). Their job duties include offering supplemental services to members. (Doc. No. 57-10, p. 41, ¶ 9; Doc. No. 57-11, p. 29, ¶ 8; Doc. No. 57-11, p. 44, ¶ 8; Doc. No. 57-11, p. 49, ¶ 9).

were different. Either way, this shows that individualized evidence will be necessary, because the time necessary to complete their jobs differs.

Furthermore, the Court notes that Humana submitted evidence that the job duties can vary based on the manager to whom that the Healthcare Coordinator reports. (Doc. No. 57-1, ¶ 12). A nationwide class would involve many managers and further require more individualized inquiries.

Based on the above, the Court finds that conditional certification is not warranted under the specific facts of this case. The Court will, however, allow Poggi to file a third amended complaint for the sole purpose of adding Harry Cruz, Celine Daniel, Heather Teppe, Tharius Bethel, Chimere Ford, Cherilyn Marrero, and Sashana Nixon as named plaintiffs. Humana has acknowledged that all of these people (with the exception of Marrero) were assigned to a team based out of the St. Petersburg, Florida facility. (Doc. No. 57-1, ¶ 28).

Marrero was not addressed by Humana, as she opted into this case after the motion for conditional certification was fully briefed. However, Marrero worked for Humana in Florida, and the Court will allow her to be added to the third amended complaint if she was assigned to a team based out of the St. Petersburg, Florida facility. Because Vontrice Wilson and Carolyn Stubbins-Mayes do not appear to be Healthcare Coordinators, they may not be added to the third amended complaint.

### III.  Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1) Plaintiff's Motion for Conditional Certification and Facilitation of Court-Authorized Notice (Doc. No. 51) is **DENIED**.

 (2) Poggi may file a third amended complaint by November 13, 2017 for the sole purpose of adding Harry Cruz, Celine Daniel, Heather Teppe, Tharius Bethel, Chimere Ford, Cherilyn Marrero, and Sashana Nixon as named plaintiffs.

**DONE AND ORDERED** at Tampa, Florida, this 30th day of October, 2017.

*/s/ Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record